UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| BRENTWOOD ACADEMY ) | |
| ) | |
| v. ) | NO. 3:97-1249 |
| ) | JUDGE CAMPBELL |
| TENNESSEE SECONDARY SCHOOLS ) | |
| ATHLETIC ASSOCIATION and ) | |
| RONNIE CARTER, Executive Director and ) | |
| Individually ) | |

MEMORANDUM

Pending before the Court are Plaintiff's Motion for Judgment in its Favor on Equal Protection Claim (Docket No. 349); Plaintiff's Renewed Motion for Summary Judgment on Antitrust Claims (Docket No. 351); and Defendant's Motion for Summary Judgment (Docket No. 354).

For the reasons stated herein, Plaintiff's Motion for Judgment in its Favor on Equal Protection Claim (Docket No. 349) is DENIED; Plaintiff's Renewed Motion for Summary Judgment on Antitrust Claims (Docket No. 351) is DENIED; and Defendant's Motion for Summary Judgment (Docket No. 354) is GRANTED.

INTRODUCTION

Defendant Tennessee Secondary Schools Athletic Association ("TSSAA") is a not-for-profit membership corporation organized to regulate interscholastic sports among its members, which include some 290 public and 55 private high schools in Tennessee. Tennessee Secondary School Athletic Ass'n v. Brentwood Academy, 127 S.Ct. 2489, 2492 (2007). Brentwood Academy is one

of those private schools. Id.[1]  The TSSAA is a state actor for purposes of the Constitution, Brentwood Academy v. Tennessee Secondary Schools Athletic Ass'n., 121 S.Ct. 924 (2001), but it is not entitled to antitrust immunity.  Brentwood Academy v. Tennessee Secondary Schools Athletic Ass'n, 442 F.3d 410, 443 (6th Cir. 2006).

This case has a long history, having produced opinions in this Court, in the Sixth Circuit Court of Appeals, and in the U.S. Supreme Court.  For purposes of the pending Motions, Plaintiff argues two claims: (1) that the TSSAA "Recruiting Rule" violates the equal protection rights of Brentwood Academy and (2) that the TSSAA has violated the antitrust laws of the United States, specifically Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1 and 2.  Defendant contends that there is only one remaining claim, the antitrust claim, and that it is entitled to summary judgment on that claim.

## EQUAL PROTECTION

Initially, the Court must address Defendant's argument that the equal protection claim is not properly before the Court, having been determined in an earlier opinion by this Court and not appealed by Plaintiff.  In its first opinion to address Plaintiff's equal protection claim, this Court stated:

> It is axiomatic that a Court should not rule upon constitutional questions unnecessarily. Given the other rulings of this Court in favor of Brentwood Academy, it is unnecessary for the Court to reach the equal protection ("as written and as applied") and substantive due process ("as written") issues. Accordingly, the Court declines to make findings of fact or conclusions of law on these issues.

Brentwood Academy v. TSSAA, 304 F.Supp.2d 981,1009 (M.D. Tenn. 2003) (citations omitted).

---

[1]  Defendant Ronnie Carter, against whom Plaintiff brought its constitutional claims, was dismissed from this case based upon qualified immunity.

2

Defendant contends that, because Plaintiff did not include the equal protection claim in its appeal, that claim is now barred. As indicated above, however, this Court never reached the merits of the equal protection claim. Therefore, there has been no final ruling on the merits of that claim. Plaintiff has now filed a Motion for Judgment on the Record on the equal protection claim. Accordingly, that claim will be considered under Fed. R. Civ. P. 52, based upon the evidence at trial, and not under the standards of Fed. R. Civ. P. 56 or 12.

The Equal Protection Clause commands that no State shall deny to any person within its jurisdiction the equal protection of the laws. U.S. Const., amend. XIV, § 1. To establish a claim under the Equal Protection Clause, a plaintiff must demonstrate that the government treated the plaintiff disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis. Club Italia Soccer & Sports Org. v. Charter Township of Shelby, Mich., 470 F.3d 286, 298 (6th Cir. 2006); see also Enquist v. Oregon Dept. of Agr., 128 S.Ct. 2146 (2008).

Plaintiff's First Amended Complaint alleges that the TSSAA Recruiting Rule, on its face and as applied to Brentwood Academy, violates the Equal Protection Clause by discriminating against certain speech based on its content and based on the identity of the speaker. Docket No. 205. Plaintiff alleges that the classifications used by the TSSAA in regulating speech impinge on Brentwood Academy's fundamental First Amendment rights, are not necessary to promote compelling governmental interests, and therefore are unconstitutional. Id.

Plaintiff does not assert that it is a member of a suspect class. Plaintiff contends that Defendant burdened its fundamental First Amendment rights. The Supreme Court has already ruled,

3

however, that Defendant did not unconstitutionally burden Plaintiff's First Amendment rights.[2] That finding is the law of this case. Therefore, the Court finds, as a matter of law, that Defendant has not burdened Plaintiff's fundamental First Amendment rights. Plaintiff asserts no other "fundamental right" which has allegedly been burdened.

Because neither a fundamental right nor a suspect class is at issue, the rational basis standard applies. Michael v. Ghee, 498 F.3d 372, 379 (6th Cir. 2007) (citing Club Italia Soccer & Sports, 470 F.3d at 298). Equal protection claims can be brought by a "class of one," where the plaintiff alleges that the state treated the plaintiff differently from others similarly situated and that there is no rational basis for such difference in treatment. Warren v. City of Athens, Ohio, 411 F.3d 697, 710 (6th Cir. 2005).

Under rational basis scrutiny, government action amounts to a constitutional violation only if it is so unrelated to the achievement of any combination of legitimate purposes that the Court can only conclude that the government's actions were irrational. Michael, 498 F.3d at 379. Where no suspect class or fundamental right is implicated, governmental action subject to rational basis scrutiny must be sustained if *any* conceivable basis rationally supports it. Trihealth, Inc. v. Board of Comm'rs. Hamilton County, Ohio, 430 F.3d 783, 790 (6th Cir. 2005). Rational basis review begins with a strong presumption of constitutionality. Graham v. Mukasey, 519 F.3d 546, 551 (6th Cir. 2008). Plaintiff bears the burden of demonstrating that Defendant lacks a rational basis, and it

---

[2] "The anti-recruiting rule strikes nowhere near the heart of the First Amendment." 127 S.Ct. at 2493. "TSSAA's limited regulation of recruiting conduct poses no significant First Amendment concerns." Id. at 2495. ". . . the First Amendment does not excuse Brentwood from abiding by the same anti-recruiting rule that governs the conduct of its sister schools." Id. at 2496.

4

may satisfy this burden either by negating every conceivable basis which might support Defendant's actions, or by demonstrating that the challenged actions were motivated by animus or ill-will.[3] Id.

This Court, the Sixth Circuit, and the U.S. Supreme Court have all found that Defendant had substantial governmental interests in establishing and enforcing the Recruiting Rule. See 304 F.Supp.2d at 994; 442 F.3d at 425-26; 127 S.Ct. at 2495-96. Those interests[4] clearly withstand rational basis review. The Court finds, as a matter of law, that the TSSAA's challenged actions were related to the achievement of its legitimate purposes and were rational. Therefore, Plaintiff has not carried its burden of establishing that the Recruiting Rule violates the Equal Protection Clause.

Accordingly, Plaintiff's Motion for Judgment in its Favor on Equal Protection Claim (Docket No. 349) is DENIED, and Defendant's Motion for Summary Judgment (Docket No. 354) is GRANTED with regard to Plaintiff's equal protection claim.

## ANTITRUST[5]

Section One of the Sherman Act provides that every contract, combination or conspiracy in restraint of trade or commerce is illegal. 15 U.S.C. § 1. Thus, Plaintiff must first show that the

---

[3] The Sixth Circuit has expressly found that there is no evidence to suggest that Defendant maliciously and intentionally abused its state authority in order to injure Brentwood in this case. 442 F.3d at 432.

[4] Those interests are (1) keeping high school athletics subordinate to academics, (2) protecting student athletes from exploitation, and (3) fostering a level playing field between schools. See, e.g., 304 F.Supp. 2d 981, 994.

[5] Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In deciding a motion for summary judgment, the court must view the factual evidence and draw all reasonable inferences in favor of the nonmoving party. Meyers v. Columbia/HCA Healthcare Corp., 341 F.3d 461, 466 (6th Cir. 2003) The Court, with regard to Plaintiff's antitrust claims, has considered the complete record filed in support and opposition to the pending Motions.

challenged restraint involves trade or commerce. Bassett v. National Collegiate Athletic Ass'n ("NCAA"), 528 F. 3d 426, 433 (6th Cir.2008); Pocono Invitational Sports Camp, Inc. v. NCAA, 317 F.Supp.2d 569, 580 (E.D. Pa. 2004). If the restraint is not commercial, it cannot be analyzed under the antitrust laws. Id.

The three "restraints" which Plaintiff alleges violated the antitrust laws in this case are (1) the Division I/Division II split for football in the TSSAA,[6] (2) the Recruiting Rule, and (3) the punishment exacted upon Plaintiff for violation of the TSSAA By-laws. Defendant contends that none of the challenged actions restrains trade or commerce.

The dispositive inquiry in determining whether the alleged restraints are commercial in nature is whether the rules (or enforcement thereof) are commercial, not whether the TSSAA is commercial. Worldwide Basketball and Sport Tours, Inc. v. NCAA, 388 F.3d 955, 959 (6th Cir. 2005); Bassett at 433. If the rules themselves and the corresponding sanctions are not commercial, then the enforcement of those rules cannot be commercial. Id.

In Bassett, the court found that Section One of the Sherman Act did not apply to the NCAA's enforcement of its rules on recruiting student athletes, because that enforcement was not a restraint of trade or commerce. Bassett at 434. Similarly, in Smith v. NCAA, 139 F.3d 180 (3d Cir. 1998), *vacated on other grounds*, NCAA v. Smith, 525 U.S. 459 (1999), the court held that the NCAA's eligibility rules were not commercial activity covered by the Sherman Act. See also Gaines v.

---

[6] A Bylaw promulgated by the TSSAA created two "divisions" (Division I and Division II) for championship tournament competition within the TSSAA. Division II is for schools which provide need-based financial aid to varsity athletes and any other school which chooses to participate in Division II. Division I is for all the rest of the member schools. The Division I/Division II classification applies only to tournament competition, not to regular season play.

6

NCAA, 746 F.Supp.738 (M.D. Tenn. 1990) (NCAA eligibility rules are not subject to antitrust analysis).

Plaintiff has not demonstrated a relevant difference between the NCAA's recruiting rules and the TSSAA's Recruiting Rule for purposes of this antitrust analysis. Indeed, Plaintiff has admitted that the TSSAA is like the NCAA. Docket No. 223, n. 2. Further, Plaintiff has not demonstrated a relevant difference between the NCAA's enforcement of its eligibility rules in Bassett and the TSSAA's enforcement of its Recruiting Rule in this case. Plaintiff's attempt to distinguish Bassett is not persuasive. Bassett involved the NCAA recruiting rules and an alleged infraction of those rules. The court found that the NCAA recruiting rules, like the eligibility rules in Smith, were explicitly non-commercial. Bassett at 433. "In fact, those rules are *anti-commercial* and designed to promote and ensure competitiveness amongst NCAA member schools." Id.(emphasis in original).

Just as the recruiting rules in the NCAA are "anti-commercial" and designed to promote and ensure competitiveness amongst NCAA member schools, the Recruiting Rule of the TSSAA, as noted above, has been found to promote similar, if not identical, interests. See 304 F.Supp.2d at 994 (keeping high school athletics subordinate to academics, protecting student athletes from exploitation, and fostering a level playing field between schools); 442 F.3d at 425-26; 127 S.Ct. at 2495-96.

In NCAA v. Board of Regents of Univ. of Oklahoma, 104 S.Ct. 2948 (1984), the Supreme Court held that the NCAA's restrictions on television broadcasts were commercial in nature and subject to the Sherman Act. In so doing, however, the Court distinguished television broadcasts from the challenged conduct in this case by stating:

> It is reasonable to assume that most of the regulatory controls of the NCAA are justifiable means of fostering competition among amateur athletic teams and

7

therefore procompetitive because they enhance public interest in intercollegiate athletics. The specific restraints on football telecasts that are challenged in this case do not, however, fit into the same mold as do rules defining the conditions of the contest, the eligibility of participants, or the manner in which members of a joint enterprise shall share the responsibilities and the benefits of the total venture.

Id. at 2969.[7]

The Court finds that, for the reasons stated in the above-cited cases, neither the Division I/Division II football split, the Recruiting Rule, nor the punishment exacted against Plaintiff for violation of the Recruiting Rule involves trade or commerce as required for proving violation of the antitrust laws. The purposes of the challenged restraints in this case are pro-competitive and relate to the promotion of fair athletic competition, not to giving Defendant any commercial advantage. Plaintiff has not proven otherwise.

Thus, because Plaintiff has not carried its burden[8] of showing that the challenged restraints affect trade or commerce, Plaintiff has not shown that the Defendant's actions are prohibited under Section One of the Sherman Act, and Plaintiff's antitrust claim under Section One fails.

---

[7] The Court stated in Gaines that there is a clear difference between the NCAA's efforts to restrict the televising of college football games and the NCAA's efforts to maintain a discernible line between amateurism and professionalism and protect the amateur objectives of NCAA college football by enforcing the eligibility rules. Gaines, 746 F.Supp. at 743. The challenged restraints in this case are more like the efforts of the NCAA to maintain amateurism in college sports than the efforts to restrict televising games.

[8] Because Plaintiff insists that the *per se* approach or the "quick look" analysis, discussed below, applies in this case, Plaintiff proceeds on the assumption that the burden of proof has shifted to Defendant. To the contrary, the ultimate burden remains on the Plaintiff to demonstrate that the alleged restraints involve trade or commerce. Plaintiff has not carried that burden.

8

Alternatively, even if Plaintiff had shown that the challenged restraints were restraints on trade or commerce, Plaintiff would still have to show that the challenged restraints unreasonably restrain trade in the relevant market, and Plaintiff has not carried that burden.

In this regard, the courts use two analytical approaches to determine whether conduct unreasonably restrains trade, the *"per se* rule" and the "rule of reason." National Hockey League Players Ass'n v. Plymouth Whalers Hockey Club, 325 F.3d 712, 718 (6th Cir. 2003). The *per se* rule identifies certain practices that are entirely void of redeeming competitive rationales. Id. For the reasons stated above, specifically the substantial, non-commercial, governmental interests underlying the alleged restraints, those alleged restraints clearly do not fall within the *per se* rule requirements.

The rule of reason analysis, including the "quick look" analysis to which Plaintiff aspires, employs a burden-shifting framework, wherein Plaintiff must first establish that the restraint produces a significant anticompetitive effect within the relevant geographic and product markets. Id. In addition, under either approach, a private antitrust plaintiff, in addition to having to show injury-in-fact and proximate cause, must allege and eventually prove "antitrust injury." Bassett at 434. Plaintiff has not demonstrated that it suffered an antitrust injury.

Even if Plaintiff allegedly has shown injury to *itself*, it has not shown injury to a relevant market as required by the antitrust laws. The purpose of the Sherman Act is to rectify the injury to *consumers* caused by diminished competition. Bassett at 434. Thus, Plaintiff must allege not only an injury to itself, but an injury to the market as well. Id. The purpose of the antitrust laws is the protection of *competition*, not *competitors*. Leegin Creative Leather Products, Inc. v. PSKS, Inc., 127 S.Ct. 2705, 2724 (2007).

9

Under either market alleged by Plaintiff[9] — high school education in Tennessee or the regulation of interscholastic athletics at the high school level in Tennessee — Plaintiff has not carried its burden of showing that the three challenged restraints have a negative effect on *economic* (rather than athletic) competition. For example, Plaintiff has not proven that the Division I/Division II split, the Recruiting Rule, or the sanctions imposed upon Brentwood Academy have increased the costs of membership in the TSSAA, negatively affected the gate receipts for high school football games, or increased the costs of high school education, particularly where the majority of TSSAA members are free public schools.

Plaintiff has not shown that Defendant's Bylaws were enacted for the purpose of affecting any price in interstate commerce and has not shown evidence of injury to *economic* competition. The harm Plaintiff alleges is not the sort of economic harm which the antitrust laws were intended to prevent.

Therefore, even if Plaintiff had shown that the facts of this case involved a restraint on trade or commerce, which it has not, Plaintiff has not shown another requisite for relief, antitrust injury. For all these reasons, Plaintiff's Renewed Motion for Summary Judgment on its Section One claims is DENIED, and Defendant's Motion for Summary Judgment (Docket No. 354) on the Section One claims is GRANTED.

Section Two of the Sherman Act provides that it is illegal for any person to monopolize, or attempt to monopolize, or combine or conspire with any other person or persons to monopolize, any part of the trade or commerce among the several States. 15 U.S.C. § 2. The offense of monopoly

---

[9] The Court assumes, for purposes of this Motion, the geographic and product markets proposed by the Plaintiff.

10

under Section Two of the Sherman Act has two elements: (1) the possession of monopoly power in the relevant market and (2) the willful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident. Eastman Kodak Co. v. Image Technical Services, Inc., 112 S.Ct. 2072, 2089 (1992).

Here, Plaintiff alleges that Defendant has monopoly power in the relevant geographic market (Tennessee) and in the relevant product market, which Plaintiff alleges to be either (1) high school education, including the component of that market comprised by interscholastic athletics and the regulation thereof, or (2) the regulation of interscholastic athletics at the high school level. Docket No. 223, pp. 23-24.

Assuming for purposes of this discussion that Plaintiff has identified the relevant markets, Plaintiff also has to show that Defendant has monopoly power, which has been defined as the "power to control prices or exclude competition." Eastman Kodak, 112 S.Ct. at 2090; Gaines, 746 F.Supp. at 745; Sanjuan v. American Bd. of Psychiatry and Neurology, Inc., 40 F.3d 247, 251 (7th Cir. 1994) (market power entails "cutting back output in the market and thus driving up prices to consumers").

This Court has previously found that the TSSAA is, for all practical purposes, the "only game in town" for the regulation of interscholastic athletics at the high school level in Tennessee and reiterates that finding. The TSSAA has monopoly power in the market for the regulation of high school athletics in Tennessee. The TSSAA, however, is *not* the only game in town for high school

11

*education* in Tennessee. Neither does the TSSAA control prices[10] or exclude competition for high school education in Tennessee.

The fact that the TSSAA has a monopoly in the regulation of high school athletics in Tennessee does not by itself violate Section Two. United States v. Microsoft Corp., 253 F.3d 34, 58 (D.C. Cir. 2001). An entity violates Section Two only when it acquires or maintains, or attempts to acquire or maintain, a monopoly by engaging in exclusionary conduct. Id. To be condemned as exclusionary, a monopolist's act must have an anticompetitive effect; that is, it must harm the competitive process and thereby harm consumers. Microsoft, 253 F.3d at 58. Harm to one or more competitors will not suffice. Id.

It is the burden of the Plaintiff to demonstrate that the monopolist's conduct indeed has the requisite anticompetitive effect. Id. at 58-59. If the Plaintiff successfully establishes the anticompetitive effect, then and only then does the burden shift to the Defendant to proffer a "procompetitive justification" for its conduct. Id. at 59.

The Court finds that Brentwood Academy has not carried its burden of demonstrating that the TSSAA significantly harms the economic competitive process and thereby harms consumers in the market for high school education in Tennessee. As noted above, the TSSAA has no power to control the prices of high school education or raise tuition prices.

---

[10] Plaintiff asserts that the Division I/ Division II split requires private schools to eliminate need-based tuition discounts, thus controlling prices. The purpose of the Division I/ Division II split, however, is not to give Defendant or its members a *commercial* advantage, because the majority of its members are free, public schools. Defendant's classification system, like the Recruiting Rule, was designed to serve interests that relate to *athletic* competition, not commercial competition.

12

As for the market of regulating interscholastic high school athletics in Tennessee, the TSSAA has a monopoly on that regulation, but Brentwood Academy again has failed to show that the TSSAA significantly harms the *economic* competitive process and thereby harms consumers in the market. For example, Brentwood Academy has not shown that the TSSAA's practices have caused prices for its regulatory services to be raised significantly above competitive rates for similar services.

Brentwood Academy asserts that the TSSAA has "doggedly maintained its monopoly by erecting barriers to entry among competitors." Docket No. 223, p. 24. Yet the alleged barriers Brentwood Academy suggests are not barriers to high school education or barriers to other entities which wish to regulate interscholastic high school athletics. The barriers which Brentwood Academy abhors are the alleged barriers to *athletic* competition, and the antitrust laws do not forbid such barriers.

In summary, Brentwood Academy has failed to carry its burden of showing that the TSSAA's control of high school interscholastic athletics or alleged control of high school education in Tennessee has a significant anticompetitive effect which is *economic*, as opposed to athletic. For these reasons, Brentwood Academy's Section Two antitrust claim cannot be sustained.

Plaintiff's Renewed Motion for Partial Summary Judgment on the Section Two antitrust claims is DENIED, and Defendant's Motion for Summary Judgment on those claims is GRANTED.

## CONCLUSION

For the reasons stated above, Plaintiff's Motion for Judgment in its Favor on Equal Protection Claims (Docket No. 349) is DENIED; Plaintiff's Renewed Motion for Summary Judgment on Antitrust Claims (Docket No. 351) is DENIED; and Defendant's Motion for Summary

13

Judgment (Docket No. 354) is GRANTED. Plaintiff's Equal Protection and antitrust claims are DISMISSED.

IT IS SO ORDERED.

_____
TODD J. CAMPBELL
UNITED STATES DISTRICT JUDGE

14